**RECORD NUMBER: 14-1363**

# United States Court of Appeals

### *for the*

# Fourth Circuit

**CYNTHIA JOYCE SLEDGE,**

*Plaintiff-Appellant,*

– v. –

**GRAPHIC PACKAGING INTERNATIONAL,**

*Defendant-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO**

## BRIEF OF APPELLEE

**MASON ALEXANDER**
**FISHER & PHILLIPS, LLP**
**227 West Trade Street, Suite 2020**
**Charlotte, NC 28202**
**(704) 334-4565**

*Counsel for Defendant-Appellee*

**CP** COUNSEL PRESS ● VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1363     Caption: Cynthia Sledge v. Graphic Packaging International, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Graphic Packaging International, Inc.
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
        Appellee Graphic Packaging International, Inc. is a wholly-owned subsidiary of Defendant Graphic Packaging Corporation, which is a wholly-owned subsidiary of Graphic Packaging Holding Company, which is a publicly traded corporation.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                 ☑YES ☐NO
      If yes, identify all such owners:
        Graphic Packaging Holding Company

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Mason G. Alexander      Date:    April 17, 2014

Counsel for: Graphic Packaging International, Inc.

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on    April 17, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Mason G. Alexander           April 17, 2014
(signature)                    (date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF THE FACTS ...........................................................1

    A.  The Safety Absolutes ....................................................................1

    B.  Sheeter Operation ........................................................................2

    C.  Workers Compensation Benefits...................................................4

    D.  Grannan's Investigation ...............................................................4

    E.  Sledge's Termination ...................................................................5

III.  SUMMARY OF ARGUMENTS ...........................................................5

IV.  ARGUMENT ........................................................................................6

    A.  The District Court Did Not Err in Its Analysis of Plaintiff's
        Claim Pursuant to N.C.G.S.§ 95-241 ...........................................6

    B.  The District Court Did Not Err in Granting Summary
        Judgment as to Plaintiff's Public Policy Claim  .........................11

        1.  Sledge's Policy Arguments Fail .......................................12

        2.  Wyatt's Affidavit is Proper Evidence................................15

        3.  Sledge's Beliefs And Suppositions Are Not Evidence.......15

        4.  The Grannan Investigation Is Irrelevant ...........................16

        5.  Sledge's Allegation That Her Termination Allowed GPI
            To Avoid Workers Compensation Benefits Is Wrong ......18

        6.  Temporal Proximity Alone Is Not Enough........................18

i

V.  CONCLUSION.........................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INDEX

## TABLE OF CASES AND STATUTES

### CASES

*Abels v. Renfro Corp.,*
    335 N.C. 209, 436 S.E.2d 822 (1993) .............................................. 6, 8

*Bonds v. Leavitt*,
    629 F.3d 369 (4th Cir. 2011) .............................................................. 14

*Brinkley v. Harbour Recreation Club*,
    180 F.3d 598 (4th Cir. 1999). ............................................................. 16

*DeJarnette v. Corning Inc.*,
    133 F.3d 293 (4th Cir. 1998) .............................................................. 13

*Fatta v. M&M Properties Management, Inc.,*
    727 S.E.2d 595, 598; 2012 N.C. App  LEXIS 760;
    2012 WL 2282622 (N.C. App. 2012) *disc. review denied*
    *Fatta v. M & M Props. Mgmt., 735S.E.2d 182,*
    2012 N.C. LEXIS 1197 (N.C. 2012) ................................ 10, 11, 12, 19

*Felty v. Graves-Humphreys Co.*,
    818 F.2d 1126 (4th Cir. 1987) ............................................................ 16

*Francis v. Booz, Allen & Hamilton, Inc.*,
    452 F.3d 299 (4th Cir. 2006) .............................................................. 16

*Gairola v. Commonwealth of Virginia Dept. of General Services,*
    753 F.2d 1281 (4th Cir. 1985) ............................................................ 16

*Hawkins v. PepsiCo, Inc.*,
    203 F.3d 274 (4th Cir. 2000) ....................................................... 13, 15

*Holland v. Washington Homes, Inc.,*
    487 F.3d 208 (4th Cir. 2007) .............................................................. 14

*Johnson v. Friends of Weymouth, Inc.,*
    120. N.C. App. 255, 461 S.E.2d 801 (1995*);*
    *disc. review denied*, 342 N.C. 895 S.E.2d 903 (1996) ........................ 6

*King v. Rumsfeld*,
    328 F.3d 145 (4th Cir. 2003) ............................................ 15

*Lilly v. Mastec N. Am., Inc.,*
    302 F. Supp. 2d 471 (M.D.N.C. 2004) ....................................... 10, 12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 9 S.CT. 1817 (1973) ................................................. 6, 7

*Morgan v. Musselwhite,*
    101 N.C. App. 390, 399 S.E.2d 1511;
    *disc. review denied*, 329 N.C. 498, 407 S.E.2d 536 (1991*)* ................ 6

*National R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) .................... 14

*Shoaf v. Kimberly-Clark Corp*,
    294 F. Supp. 2d 746 (M.D.N.C. 2003) ....................................... 11, 12

*Smith v. Computer Task Grp.*,
    568 F. Supp. 2d 603 (M.D.N.C. 2003) ................................................ 19

*Tinsley v. First Union Nat' l Bank*,
    155 F.3d 435 (4th Cir. 1998) ............................................ 14

*Wiley v. United Parcel Service, Inc.*,
    102 F. Supp. 2d 643 (M.D.N.C. 1999) .................................................. 6

*Williams v. Cerberonics, Inc.*,
    871 F.2d 452 (4th Cir. 1989) ............................................ 16

## **STATUTES**

N.C.G.S. § 95-241 ....................................................................... 5

N.C.G.S. §§ 97-1 et. seq.. .............................................................. 7

## **<u>OTHER AUTHORITIES</u>**

Fed. R. Civ. P. 56 (c)(1)(A). ........................................................... 15

# I.     INTRODUCTION

This is a worker's compensation retaliation case arising under the law of North Carolina. Summary judgment was granted in this case because Appellant Cynthia Sledge did not have enough evidence of retaliation to get to a jury. In her brief, Sledge makes the same arguments to this Court that she made to the district court.  The district court properly analyzed those arguments under North Carolina law and reached the correct decision. It should be affirmed.

# II.     STATEMENT OF THE FACTS

GPI will not present a full statement of the facts.  It will expand upon and supplement Sledge's statement of the facts in appropriate areas.

## A.     The Safety Absolutes

GPI's most serious safety rules are known as the Safety Absolutes. (J.A. 34) Five specific types of conducts are prohibited, including reaching into moving equipment.  Violation of any of the Safety Absolutes is a terminable offense. (J.A. 72-73).

Sledge received a copy of the employee handbook in which the Safety Absolutes are published.  (J.A. 34, 42).  Sledge was issued a separate copy of the Safety Absolutes, for which she signed a receipt.  (J.A. 74).  Employees are regularly trained on the Safety Absolutes and other safety issues. (J.A. 44).  Sledge identified her signature on sign-in sheets for Safety Absolutes training that she

took in 2010 and 2011.  (J.A. 45-47, 75-78). Sledge admitted in her deposition  that she was familiar with the Safety Absolutes.  (J.A. 44).

**B.    Sheeter Operation**

The sheeter is a large machine that cuts paper into sheets.  A large roll of paper is put on a roll stand behind machine.  It is fed through a series of rollers and under the blade.  (J.A. 35).

The product that was being run on the sheeter when Sledge was injured was a 12-point board. Sledge admitted having run the paper before (J.A. 51).  Alan McNeil, the Lead Sheeter Operator, testified that it was perhaps their third run of that paper.   The first time the paper was run, McNeil trained Sledge on how to run it.  (J.A. 103-104).

The paper was thick and when cut, it retained "curl."  A pallet of the cut paper would be flipped upside down to press out the curl.  The plant had previously used a lift truck and a clamp truck to flip a pallet.  Concerned about the safety hazards of that, the plant acquired a device designed for the purpose called an "E-Z Flipper."  Sledge did not want to use that device so she set up the sheeter differently to avoid it.  She put the roll of paper on the rear rollstand rather than on the front.  This would allow her to bring two "decurling" rollers into play.  She ran the paper through the machine upside down in so that it would not need to be flipped.  (J.A. 35-36, 50-53).

-2-

McNeil testified that this product was coated on one side and, therefore, slick.  It was uncoated on the other side and coarse.  (J.A. 108-109).  McNeil said that the paper would normally be run with the coated or slick side up.  He once discussed the possibility of running the paper upside down with Sledge and he recommended that she not run it with the uncoated side up.  (J.A. 110).  On the evening of her accident, Sledge was running the paper upside down, that is with the uncoated side of the paper facing up.

Sledge appears to be relying on the testimony of Alan McNeil to support her the assertion that McNeil trained her to pull paper out of the machine while it was moving, and that all sheeter operators tapped the paper to check its tension.  In support of this, she cites page 271 of the Joint Appendix.  That reference, however, provides no such support.  McNeil did not testify as Sledge has described.

Rather McNeil testified that an operator can check tension when the paper is not moving by turning an adjustment wheel that controls part of the machine.  The operator can check tension when the paper is moving by means of pulling up a screen on the console and can adjust tension from the console.  (J.A. 270-271).

Sledge writes that Grannan testified she would not have received any training on that particular material that was being run.  In fact, Grannan testified that there is generally not training just for a substrate change and, therefore, Grannan agreed that Sledge probably did not have any training on that specific

-3-

material. (J.A. 147). Interestingly, however, McNeil testified that he personally trained Sledge on the material in question. (J.A. 103-104).

### C.    Workers Compensation Benefits

Sledge writes that once her employment was terminated, no workers' comp benefits were paid. This is simply untrue. Tara-Lee Partridge, the Claims Manager for GPI, testified that Sledge received medical benefits. Sledge did not receive disability income benefits because, had Sledge not been terminated, the plant had light duty work available that she could have performed. (J.A. 209, 241-243). Since Sledge would not have received disability income benefits had she not been terminated, her termination did not qualify her for those benefits.

### D.    Grannan's Investigation

Sledge writes that she was terminated on the basis of Department Manager, Dan Grannan's, investigative report. There is no evidence to support this. Grannan testified that he learned of the accident by telephone. He was not present when it occurred. (J.A. 131). Grannan went to the plant (J.A. 138). He inspected the machine with a technician. (J.A. 148-149, 152-153). Grannan talked to Sledge upon her return. (J.A. 159-160). Grannan, however, testified that he did not make the determination as to whether Sledge's conduct violated the Safety Absolutes. He testified that he did not have any input into Sledge's termination. (J.A. 175).

-4-

### E. Sledge's Termination

Plant Manager, Cindy Wyatt, testified by affidavit, that HR Manager, Philip Tacy, conducted an investigation. Tacy interviewed employees who were working immediately around the sheeter. He learned that none of them had witnessed the accident. He interviewed Alan McNeil, the first shift Sheeter Operator, who trains other employees on the Sheeter, for the purpose of obtaining information regarding the proper operation of that machine. Tacy interviewed Sledge. (J.A. 37). He took notes of that interview, which Sledge reviewed and signed. Sledge admitted reaching out and tapping the paper while it was moving. (J.A. 85-86).

Tacy reviewed past instances of employees who had violated the Safety Absolutes. He determined that all such violators had been terminated. Tacy took his report to Plant Manager Wyatt and recommended Sledge's termination. Wyatt reviewed the facts and the plant's past practice. She decided to terminate Sledge's employment. (J.A. 37).

### III.   SUMMARY OF ARGUMENTS

The district court did not err in granting GPI's motion for summary judgment. The district court correctly applied North Carolina law and granted summary judgment because Sledge could offer no evidence that the reason for her termination, as established by GPI, was pretext. Additionally, the arguments Sledge makes in attempting to establish pretext are either irrelevant or unavailing.

# IV.  ARGUMENT

### A.    The District Court Did Not Err in Its Analysis of Plaintiff's Claim Pursuant to N.C.G.S.§ 95-241.

N.C.G.S. § 95-241 prohibits employers from discriminating or retaliating against employees based upon the assertion of rights under the Workers' Compensation Act.   In order to prevail, the employee must prove that the retaliatory motive was a substantial factor in the adverse employment actions taken by the employer.  *Johnson v. Friends of Weymouth, Inc.,* 120. N.C. App. 255, 259, 461 S.E.2d 801, 804 (1995*); disc. review denied*, 342 N.C. 895, 467 S.E.2d 903 (1996).  The burden of proof in retaliatory discharge action is on the employee. *Morgan v. Musselwhite,* 101 N.C. App. 390, 393, 399 S.E.2d 1511. 153; *disc. review denied*, 329 N.C. 498, 407 S.E.2d 536 (1991*).*

The North Carolina Supreme Court has recognized that federal decisions can offer guidance in establishing evidentiary standards in employment discrimination cases.  *Abels v. Renfro Corp.,* 335 N.C. 209, 218, 436 S.E.2d 822, 828 (1993). This is particularly true in a case in which plaintiff has no direct evidence of an intent to retaliate and must, therefore, fall back on the indirect proof scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 9 S.CT. 1817 (1973); *Wiley v. United Parcel Service, Inc.*, 102 F. Supp. 2d 643 (M.D.N.C. 1999).

In the instant appeal, Sledge submits that the district court applied the federal standards in a way that is inconsistent with North Carolina law.  Sledge

argues that the district court ignored the fact that REDA creates an affirmative defense by which the employer may avoid liability by proving that it would have taken the same action regardless of the assertion of rights under the Workers Compensation Act, N.C.G.S. §§ 97-1 et. seq.

Under a pure *McDonnell Douglas* analysis, if the employee makes out a *prima facie* case of discrimination, then the burden shifts to the defendant to "articulate" a legitimate reason for its action. If the defendant is able to do so, then the burden shifts to the plaintiff to produce evidence that the proffered reason for the adverse employment action is mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804. Sledge argues that existence of the REDA affirmative defense removes the burden of establishing pretext from her. Sledge is wrong.

In this case, Sledge had no evidence of a causal connection between her assertion of rights under the Workers' Compensation Act and her termination. Indeed, when asked what evidence she had that she was terminated because of a workers' compensation claim, Plaintiff testified as follows:

> Q.    *What evidence do you have that you were terminated because you filed a workers' compensation claim?*
>
> A.    *When I was injured before and I didn't use workers' comp, they didn't fire me. That's the only evidence that I would know of.* (J.A. 70).

The district court held that Plaintiff was able to establish a *prima facie* case solely on the basis of temporal proximity. Of course, when the misconduct and the

assertion of rights occur almost contemporaneously, temporal proximity may not be as useful as in other cases. But it was the only evidence Sledge had.

Nonetheless, having concluded that Sledge had made out a *prima facie* case, the district court turned its attention to whether GPI could meet its burden under the affirmative defense. The district court held that GPI had met this burden by offering sufficient evidence that it would have terminated Sledge even in the absence of a workers' compensation claim.

The evidence before the district court was substantial, compelling, and undisputed. There was no dispute that Plaintiff reached in and tapped the paper (or "web"). It is uncontested that the machine was running at the time Sledge did this. (J.A. 85-86). It is uncontested that the Safety Absolutes prohibit an employee from reaching into moving equipment. (J.A. 72-73). It is uncontested that the Safety Absolutes are published in the employee handbook and posted in the plant. (JA. 34, 42). It is uncontested that Sledge had been issued a copy of the Safety Absolutes and that she had been in training classes on the Safety Absolutes more than once. (J.A. 45-47, 75-78). Indeed, Sledge admitted that she was familiar with the Safety Absolutes. (J.A. 44).

In *Abels v. Renfro Corp.,* 335 N.C. 209, 218 (1993), the North Carolina Supreme Court noted that in these retaliatory discharge cases, evidence of how the employer has treated similarly situated employees in the past and how it was

-8-

treating them at the time of the disputed discharge is critical to determining the employer's state of mind in making the decision.

In the instant case, it is undisputed that every employee who has been caught violating the Safety Absolutes has been terminated. It is undisputed that this includes employees who did not suffer workplace injuries. It is undisputed that there were employees presently working in the plant who had suffered work related injuries, but who had not been terminated because they had not violated the Safety Absolutes. (J.A. 37).

It is uncontested that HR Manager, Philip Tacy, conducted an appropriate investigation into the matter. It is uncontested that Tacy interviewed employees who might have witnessed the incident, although none did. It is uncontested that Tacy interviewed the Lead Sheeter Operator, Alan McNeil, in order to learn more about the operation of the machine. It is uncontested that Tacy interviewed Sledge and that she admitted the essential facts. It is uncontested that Tacy reviewed the plant's past practice with respect to violations of the Safety Absolutes. It is uncontested that Tacy recommended Sledge be terminated for violating the Safety Absolutes to Plant Manager, Cindy Wyatt, and that she decided to accept that recommendation. (J.A. 36-37).

It was based upon all of this uncontested evidence that the district court concluded GPI had carried its burden of showing, that would have terminated

-9-

Sledge regardless of whether she had asserted rights under the Workers' Compensation Act.

Thus, the district court held that Sledge was able to make out a *prima facie* case on the basis of temporal proximity. On the other hand, GPI had established that it would have taken the same action regardless.

Relying upon *Lilly v. Mastec N. Am., Inc.,* 302 F. Supp. 2d 471, 481 (M.D.N.C. 2004), the district court then turned to the pretext analysis of *McDonnell Douglas*, and held that Sledge had no evidence of pretext. Sledge argues on appeal that the district court erred in doing so, and that North Carolina law does not provide for the burden to shift back to the Plaintiff to establish pretext. In fact, the district court was exactly right. North Carolina law does require a plaintiff to establish pretext in such a situation.

In *Fatta v. M&M Properties Management, Inc.,* 727 S.E.2d 595, 598; 2012 N.C. App LEXIS 760; 2012 WL 2282622 (N.C. App. 2012) *disc. review denied Fatta v. M & M Props. Mgmt., 735S.E.2d 182, 2012 N.C. LEXIS 1197 (N.C. 2012*), the North Carolina Court of Appeals dealt with precisely the issue of pretext. In that case, the Court of Appeals cited the *Lilly* formulation with approval. Indeed, the Court of Appeals went on to apply *Lilly*, to the facts of the case before it. In *Fatta*, the Court of Appeals found summary judgment to be appropriate where the

-10-

defendant had established a legitimate reason for the discharge and plaintiff could offer no evidence of pretext.

But the North Carolina Court of Appeals did not just require evidence of pretext in *Fatta*, it defined the standard that evidence had to meet. Specifically, the Court of Appeals adopted the definition of pretext found in *Shoaf v. Kimberly-Clark Corp*, 294 F. Supp. 2d 746 (M.D.N.C. 2003). *Fatta* at 600.

*Shoaf* held that to establish pretext, a plaintiff must show both that the defendant's proffered reason for discharge was false and that the real reason was discrimination. *Shoaf* also held that temporal proximity alone could not establish pretext. *Shoaf*, 294 F. Supp. 2d at 757-758. *Fatta* at 600.

Hence, when it came to pretext, Sledge had no relevant evidence to offer and temporal proximity, without more, was of no use. The district court correctly applied North Carolina law. It did not err in granting tine motion for summary judgment as to Sledge's REDA claim.

### B. The District Court Did Not Err in Granting Summary Judgment as to Plaintiff's Public Policy Claim.

Sledge avers that the district court erred in granting summary judgment as to her public policy claim. Again, Sledge takes issue with the district court's holding that she had not met her burden of establishing pretext. She contends that the law does not impose such a burden on her and that even if it does, she has met it.

-11-

As discussed more fully above, the district court found that GPI had met its burden of establishing a legitimate, non-discriminatory reason for termination in the statutory claim. That same evidence is sufficient for the same purpose in the common law claim. Also as discussed above, the courts of North Carolina and the District Courts in North Carolina have held that in such circumstances, Plaintiff must come forward with some evidence to demonstrate that the employer's proffered reason for the adverse personnel action is mere pretext. *Fatta v. M&M Properties Management, Inc., supra; Lilly v. Mastec N. Am., Inc. supra; Shoaf v. Kimberly-Clark Corp*, 294 F. Supp. 2d 746, 757-758 (M.D.N.C. 2003). Sledge may disagree with that rule of law, but if she wishes to change it, her argument would better be directed to the appellate courts of North Carolina.

Sledge then makes a number of largely unrelated arguments that the proffered reason for her discharge is pretext. Her arguments are thin and unavailing. They are addressed below.

### 1. Sledge's Policy Arguments Fail.

Sledge offers three arguments that she should not have been fired pursuant to the Safety Absolutes. First, Sledge avers that her termination was not proper under that policy because "extenuating circumstances" existed in her case. Sledge claims she was tired from long hours and not properly trained on this new paper.

She contends that these reasons, are extenuating circumstances that excuse her decision to reach out and tap the paper as it was running through the sheeter.

The employer is the final arbiter of its own policy. Whether the policy is wise or foolish is of no moment. Whether the employer is correct that a policy violation occurred is of no moment, so long as the employer is motivated by the good faith belief that a policy violation did occur. As this Court has held, is not the province of a court to decide whether the proffered reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Second, Sledge argues that she did not "reach into the machine" and there are no witnesses who said that she did. The damming evidence is Sledge's own admission that she made to Philip Tacy, and that she has repeated in this lawsuit, to wit, that she reached out and tapped the moving paper in order to test the tension. Sledge seems to believe that reaching into the machine requires removing a side panel and reaching in to the uncovered space.

The company's view is that when Sledge reached out to touch the paper that was moving through the sheeter, toward the blade, she reached into the machine. And it cannot be disputed that Sledge's hand ended up in the machine. That is how

she was injured. Indeed, Sledge suffered precisely the kind of injury that is likely to result from reaching out to tap the paper as it is running through the sheeter.

Even if Sledge could establish that tapping the paper did not rise to the level of putting her hand into a machine, that is of no avail. Plaintiff cannot survive summary judgment "simply by showing that the employer was factually incorrect," as long as the employer had a good faith belief in the reason for termination. This Court held that, when assessing pretext, a court's focus must be on the decision maker's perception, namely whether the decision maker's belief in its stated reason was credible. *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 217 (4th Cir. 2007); *Bonds v. Leavitt*, 629 F.3d 369, 388 (4th Cir. 2011); *see also Tinsley v. First Union Nat' l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant."), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Finally, Sledge writes that it is undisputed that her injury was an accident. Here Sledge asserts more than the facts will permit.  While it is unlikely that Sledge intended to injure herself, there is no question that she intended to reach out and tap the paper.  Her stated purpose was to test the tension of the paper.  That action was not an accident.  It was deliberate. And that action violated the Safety Absolutes.  There is no evidence to the contrary.

-14-

## 2. Wyatt's Affidavit is Proper Evidence.

Sledge asserts that Wyatt's testimony, by affidavit, that "there has been no employee who violated the Safety Absolutes and who was not terminated including two who did not suffer work-related injuries" is unsupported by any other evidence. Sledge characterizes Wyatt's testimony as self-serving and conclusory. But Sledge misses the point.

There is nothing improper in the form that Wyatt's sworn testimony took. A motion for summary judgment can be properly supported by affidavit. Rule 56 (c)(1)(A) Fed.R.Civ.Pro. Sledge had every opportunity in discovery to obtain evidence that would contradict Wyatt's testimony. She offers none. The facts contained in Wyatt's statement stand uncontested because Sledge has no evidence with which to contest them.

## 3. Sledge's Beliefs And Suppositions Are Not Evidence.

Sledge asserts, "the Plaintiff also believes she was terminated for filing a workers' compensation claim because she was injured before on the job, did not file a workers' compensation claim and was not terminated." (Brief of Appellant p. 26). Sledge's opinion is not evidence.

The courts have repeatedly held that a plaintiff's subjective belief as to her own performance is not sufficient to oppose a motion for summary judgment. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)*; Hawkins v. PepsiCo, Inc.,*203

F.3d 274, 280 (4th Cir. 2000); *Williams v. Cerberonics, Inc.*,871 F.2d 452, 456 (4th Cir. 1989); *Gairola v. Commonwealth of Virginia Dept. of General Services,*753 F.2d 1281, 1288 (4th Cir. 1985). Similarly, a plaintiff's personal opinion as to the motivation in the decision to discharge her is not evidence that will establish pretext. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.") (*citing Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). *See also*: *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 609 (4th Cir. 1999).

### 4.    The Grannan Investigation Is Irrelevant.

Sledge argues that the investigation conducted by Dan Grannan was flawed. By this she hopes to suggest that there is evidence of pretext. Sledge is wrong. The aspects about the Grannan investigation about which she complains were irrelevant to the decision to terminate her employment.

Grannan was the printing department manager. He drove to the plant as soon as he learned of Sledge's accident. (J.A. 136-138). Sledge had already left for the hospital when he arrived. Grannan inspected the sheeter with a maintenance technician in order to determine whether it was safe to operate the machine. (J.A.

148-149). If the accident were caused by a mechanical malfunction, then it would not be safe to run the sheeter until repairs were made.

When Sledge returned from the hospital, Grannan asked her what happened. She told him her story and pointed out the area of the machine where she had touched the web and the specific rollers that had caused her injury. (J.A. 159-161) Grannan prepared a report that was sent and took some pictures of the sheeter. Grannan sent these to the plant manager. (J.A. 135).

Significantly, Grannan had no involvement in subsequent events. He did not decide that Sledge's conduct constituted a violation of the Safety Absolutes. He did not participate in the decision to terminate Sledge's employment. (J.A. 174-175).

Thus, Sledge's arguments about Grannan's investigation are irrelevant. She has no evidence to suggest that the photographs Grannan took, or how he took them had anything to do with her termination. Sledge seems to contend that Grannan did not understand exactly where she tapped the paper. That is also irrelevant. It does not matter where Sledge tapped the moving paper. What matters is that she did.

The purpose of any investigation is to learn what happened. Not every bit of information developed is relevant or useful. Sledge chooses to attack Grannan's inquiry, which played no role in her termination. She chooses to ignore her

admission that she reached out and tapped the paper as it was running through the machine. That is the central and controlling fact. That conduct was the reason for the termination decision. (J.A. 37, 85-86). That Sledge engaged in that conduct has never been disputed.

### 5. Sledge's Allegation That Her Termination Allowed GPI To Avoid Workers Compensation Benefits Is Wrong.

Sledge makes an assertion that is factually incorrect. She asserts that she was terminated so that the company could avoid paying her expensive medical bills. In fact, Tara-Lee Partridge testified Sledge's termination did not affect her medical benefits. Neither did her termination affect her eligibility for disability income benefits because there was light duty work in the plant available. Had Sledge not been fired, work was available for her. (J.A. 241-243).

Thus, GPI's liability for workers compensation was exactly the same whether Sledge was terminated or not. It was responsible for medical benefits. Had no light duty work been available for Sledge, then GPI would have been responsible for disability income benefits as well. But such work was available. (J.A. 241). Being terminated did not entitle Sledge to greater benefits than she would have otherwise received.

### 6. Temporal Proximity Alone Is Not Enough.

Ultimately, the only evidence Sledge has is the temporal proximity between her assertion of rights under the Workers' Compensation Act and her termination.

-18-

But even this is clouded by essentially the same temporal proximity between her violation of the Safety Absolute and her termination. Beyond this, Sledge has no evidence.

Temporal proximity alone was enough to enable Sledge to establish a *prima facie* case of workers comp retaliation. *Smith v. Computer Task Grp.*, 568 F. Supp. 2d 603, 614 (M.D.N.C. 2003). But temporal proximity alone is not enough to establish pretext. What is required is evidence that the proffered reason is incorrect and evidence that the real reason is discrimination. *Fatta* at 600. Sledge has no evidence that the proffered reason for her termination was incorrect. Neither has she any evidence that the real reason was discrimination.

## V.    CONCLUSION

In this case, Sledge has no evidence that her termination was motivated by her workers compensation claim. She was able to make out a *prima facie* case only because of temporal proximity. Summary judgment was appropriate in this case under North Carolina law. The district court properly applied that law. GPI urges this court to affirm the order of the district court below.

Respectfully submitted, this the 27th day of June, 2014.

-19-

FISHER & PHILLIPS LLP


BY:    */s/ Mason G. Alexander*
       Mason G. Alexander
       NC State Bar No. 23945
       Attorneys for Defendant-Appellee
       227 West Trade Street, Suite 2020
       Charlotte, NC 28202
       Telephone: (704) 334-4565
       Facsimile: (704) 334-9774
       Email:  malexander@laborlawyers.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 14-1363          **Caption:** Cynthia Sledge v. Graphic Packaging International

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    ☑ this brief contains _____4,457_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☑ this brief has been prepared in a proportionally spaced typeface using
Microsoft Word 2010 _____ [*identify word processing program*] in
Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

    ☐ this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Mason G. Alexander _____

Attorney for Appellee _____

Dated: 6/27/2014 _____

# CERTIFICATE OF SERVICE

I certify that on <u>June 27, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Angela Newell Gray, Esq.
GRAY NEWELL
7-B Corporate Center Court
Greensboro, NC 27408
336-724-0330
angela@graynewell.com

/s/ Mason G. Alexander
_____
Signature

6/27/2014
_____
Date